Joseph Meyers (CA SBN #325183)
National Immigration Project of the National Lawyers Guild (NIPNLG)
2201 Wisconsin Ave NW, Suite 200
Washington, DC 20007
Telephone: (202) 656-4788
joseph@nipnlg.org

Stacy Tolchin (CA SBN #217431)
Email: Stacy@Tolchinimmigration.com
Megan Brewer (CA SBN # 268248)
Email: Megan@Tolchinimmigration.com
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Counsel for Plaintiff
Martin VARGAS

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Martin VARGAS,<br><br>　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, a component of the Department of Homeland Security<br><br>DEPARTMENT OF HOMELAND SECURITY, Office of the Inspector General,<br><br>　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Freedom of Information Act<br>5 U.S.C. § 552 |

**INTRODUCTION**

1. On March 8, 2021, Plaintiff Martin Vargas' 55-year-old father Martin Vargas Arellano died, after having contracted COVID-19 in the custody of Defendant Immigration and Customs Enforcement (ICE). Mr. Vargas Arellano was in ICE custody from April 2019 up until a few days prior to his death. In December 2020, Mr. Vargas Arellano contracted COVID-19 while detained at the Adelanto ICE Processing Center ("Adelanto"). For the next three months, he suffered a string of COVID-related medical complications that led to multiple hospitalizations, a stroke, and his eventual death.

2. After Mr. Vargas Arellano suffered brain death on February 26, 2021, ICE released him purportedly on his own recognizance to a hospital, where he died shortly thereafter.

3. This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking the release of unlawfully withheld agency records pertaining to the circumstances surrounding Mr. Vargas Arellano's death. Full and timely disclosure of these records in compliance with the FOIA is necessary for Plaintiff Vargas to gain a full understanding of the circumstances of his father's death, particularly as Plaintiff is currently engaged in pre-litigation investigation on this matter. Information about Defendants' actions regarding COVID-19 diagnosis and treatment, as well as information regarding medical release and notification of death is also of critical importance to all immigrants detained by ICE and their

families – and especially to those who, like Mr. Vargas Arellano, are particularly vulnerable to serious illness and death because of COVID-19.

4. On April 1, 2021, Plaintiff Vargas submitted FOIA requests to Defendants ICE and the Department of Homeland Security's Office of the Inspector General (DHS-OIG) seeking all records regarding medical treatment and COVID-19 pertaining to Martin Vargas Arellano. To date, Defendants have not produced any records in response to the Request.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331, 5 U.S.C. §§ 552(a)(4)(B) and (6)(E)(iii).

6. Plaintiff resides within this District. Venue is proper under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

7. Plaintiff Martin Vargas is the U.S.-citizen son of Martin Vargas Arellano. He resides in Victorville, California.

8. Defendant ICE is a component agency of the Department of Homeland Security (DHS). DHS is a department within the executive branch of the United States government. ICE is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). Upon information and belief, ICE has possession, custody, and control over the records Plaintiff seeks.

9. Defendant DHS-OIG is an office within the Department of Homeland Security. It is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). Upon information and belief, DHS-OIG has possession, custody, and control over the records Plaintiff seeks.

**FACTUAL STATEMENT**

**A. Martin Vargas Arellano's Background and Immigration Proceedings**

10. Martin Vargas Arellano entered the United States in 1968 when he was two years old. On May 15, 2013, ICE took Mr. Vargas Arellano into custody and placed him in removal proceedings. Later that year, an immigration judge found him to be a member of the *Franco-Gonzalez v. Holder*, Case No. 10-2211 (C.D. Cal.) class due to a mental disability, which rendered him unable to represent himself in immigration proceedings.

11. As a *Franco-Gonzalez* class member, Mr. Vargas Arellano was assigned a Qualified Representative (an appointed attorney in immigration court) in 2014. He was released from custody in August 2014 while his Petition for Review was pending before the Ninth Circuit. In 2018, the Ninth Circuit remanded his case at the request of the parties. In 2019, ICE placed him in custody again after a criminal arrest five years after his release in 2014.

12. In November 2019, an immigration judge denied Mr. Vargas Arellano's application for withholding of removal and protection under the Convention

Against Torture (CAT). Mr. Vargas Arellano's attorney, Margaret Hellerstein, appealed that decision to the Board of Immigration Appeals (BIA).

13. On April 14, 2021, a month after Mr. Vargas Arellano's death, the BIA remanded the case to the immigration court to reconsider his eligibility for withholding of removal and protection under CAT, citing clear error by the immigration judge.

**B. Martin Vargas Arellano's Illness and Death[1]**

14. At the time of Mr. Vargas Arellano's re-detention by ICE in 2019, he was 53 years old. He not only suffered from severe psychiatric illnesses, but also several medical conditions that made him particularly vulnerable to serious illness or death from COVID-19, including high blood pressure, diabetes, and liver disease.

15. During the pandemic, ICE opposed numerous requests by Ms. Hellerstein to have Mr. Vargas Arellano released given his medical vulnerability. By October

---

[1] On March 23, 2021, in *Roman v. Mayorkas*, No. 5:20-cv-00768-TJH-PVC this Court referred the death of Mr. Vargas Arellano, who was a class member in that ongoing civil litigation, to a Special Master for investigation. On July 16, 2021, the Special Master issued a Report and Recommendation, which was accepted by the Court on August 8, 2021, finding, among other things, that Mr. Vargas Arellano died of complications due to COVID-19, which he contracted at Adelanto. Plaintiff has been unable to access to the documents that were relied upon in the Report and Recommendation. The facts alleged in this Complaint arise primarily from the findings of the Report and Recommendation.

2020, nearly twenty percent of the people detained at Adelanto had tested positive for COVID-19.

16. In early December of 2020, Mr. Vargas Arellano tested positive for COVID-19. In the subsequent days, he suffered from shortness of breath, fever, dry cough, and eventually COVID-19 pneumonia, for which he had to be hospitalized, and was then returned back to the Adelanto detention center. *See* Ex. A, Special Master's R. & R. Following the Investigation into the Death of Martin Vargas Arellano, *Roman v. Mayorkas*, No. 5:20-cv-00768-TJH-PVC (C.D. Cal. July 16, 2021), ECF No. 1220, at 3.

17. On February 17, 2021, after experiencing further shortness of breath, Mr. Vargas Arellano was again admitted to a hospital for COVID-19. *Id.* at 4.

18. On February 26, 2021, Mr. Vargas Arellano suffered a stroke and was declared brain dead. *Id.* at 6.

19. On March 5, 2021, ICE sent the hospital treating Mr. Vargas Arellano an Order of Release noting that he was being released on his own recognizance. *Id.* at 6.

20. On March 8, 2021, Mr. Vargas Arellano died due to complications brought on by COVID-19. *Id.* at 7.

21. On March 15, 2021, after learning that her client had been released, Ms. Hellerstein contacted Mr. Vargas Arellano's deportation officer, Sergio Guzman, by phone, inquiring about his whereabouts. He informed her that he was unaware of

Mr. Vargas Arellano's location. The next day she emailed Mr. Guzman to follow up. Mr. Guzman was instructed by his supervisors to ignore Ms. Hellerstein's email and not speak with her any further about Mr. Vargas Arellano's case. *Id.* at 8.

22. Over the next few days, Ms. Hellerstein reached out to hospitals, shelters, police stations, and the Mexican Consulate seeking information about Mr. Vargas Arellano. On March 18, 2021, Ms. Hellerstein learned of her client's death after contacting the coroner's office. Plaintiff Vargas learned of his father's death shortly thereafter.

23. Plaintiff has no access to the documents that were relied upon in the Special Master's Report and Recommendation. He sought to obtain them but the Court denied his motion to intervene. *See Roman v. Mayorkas*, No. 5:20-cv-00768-TJH-PVC, 2021 WL 6103180 (C.D. Cal. Oct. 15, 2021), ECF No. 1352. Plaintiff filed a Motion to Reconsider the decision on October 29, 2021 which remains pending. His only present remedy to obtain documents from Defendant ICE regarding his father's treatment and illness is through the Freedom of Information Act.

**C. Plaintiff's FOIA Request to ICE**

24. On April 1, 2021, Plaintiff filed a FOIA request with Defendant ICE seeking all ICE communication regarding medical treatment and COVID in Mr. Vargas Arellano's case after March 13, 2020.

25. On May 4, 2021, twenty-three working days after filing the request, Plaintiff followed up with Defendant ICE, as he had not received a response or acknowledgement of his request.

26. By e-mail dated June 24, 2021, ICE acknowledged receipt of the FOIA request on June 23, 2021.

27. On September 22, 2021, ICE denied Plaintiff's FOIA request, claiming an exemption under 5 U.S.C. § 552(b)(7)(A) due to the open status of ongoing law enforcement investigations and citing the pending litigation in *Roman v. Mayorkas*. Ex. B, ICE Denial of FOIA request.

28. On November 16, 2021, Plaintiff filed a timely appeal of ICE's denial on the basis that ICE had not established that the records sought have been compiled for law enforcement purposes as is required under exemption 7; that exemption 7(A) is facially inapplicable because *Roman v. Mayorkas* is not a pending or prospective enforcement proceeding; and that ICE's denial is inadequate because the agency has not explained how any disclosure could reasonably be expected to interfere with enforcement proceedings. Ex. C, Plaintiff's Administrative Appeal.

29. On December 15, 2021, Plaintiff's appeal was sustained and the request was remanded. Ex. D, ICE Response to Appeal.

30. On January 14, 2022, twenty working days after the request was remanded, Plaintiff contacted ICE requesting an update on the remand, explaining

the pressing need for the information sought, and expressing an interested in resolving the request without litigation.

31. To date, Defendant ICE has yet to respond to Plaintiff's request. As of the date of filing of this Complaint, it has been two-hundred and seventeen working days since Plaintiff's initial FOIA request and forty two working days since the request was remanded.

**C. Plaintiff's FOIA Request to DHS-OIG**

32. On April 1, 2021, Plaintiff also filed a FOIA request with Defendant DHS-OIG seeking all ICE communication regarding medical treatment and COVID in Mr. Vargas Arellano's case after March 13, 2020.

33. By e-mail dated May 17, 2021, thirty-two working days after the filing of the request, Defendant DHS-OIG acknowledged receipt of the FOIA request on April 19, 2021.

34. On May 28, 2021, Defendant DHS-OIG emailed Plaintiff a letter identical to the May 17, 2021, merely acknowledging the receipt of the request and assigning it the same FOIA reference number.

35. To date, Defendant DHS-OIG has yet to respond to Plaintiff's request. As of the date of filing of this Complaint, the online DHS FOIA portal states that the estimated delivery date of the FOIA is 05/22/2021 and the status is "Assigned for Processing." It has been two-hundred and seventeen working days since Plaintiff's initial FOIA request to DHS-OIG.

## CAUSE OF ACTION

### FOIA Violation: Unlawful Withholding of Agency Records

36. Plaintiff re-alleges and incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

37. Upon receiving Plaintiff's FOIA requests, Defendants were obligated under 5 U.S.C. § 552(a)(3) to promptly conduct a reasonable searches for records responsive to the requests and to make determinations concerning each request within the time period set forth in 5 U.S.C. § 552(a)(6) – 20 business days, to be extended by no more than 10 business days in the case of "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i).

38. Plaintiff has exhausted all administrative remedies with respect to his FOIA request to ICE because more than 20 working days have passed since the request has been remanded and the agency has failed to make a determination on the remanded request. 5 U.S.C. § 552 (a)(6)(C)(i). Because "[a] request upon remand is still a request…it, too, must be acted upon within twenty working days, pursuant to 5 U.S.C. § 552(a)(6)(A)(i)." *Coleman v. Drug Enf't Admin.*, 714 F.3d 816, 824 (4th Cir. 2013).

39. Plaintiff has exhausted all administrative remedies with respect to his FOIA request to DHS-OIG because it has been more than 20 working days since the request has been filed and the agency has failed to make any determination with respect to the request. 5 U.S.C. § 552 (a)(6)(C)(i).

40. Plaintiff has a statutory right under the FOIA, 5 U.S.C. § 552(a)(3), to the requested records and there is no legal basis for Defendants' failures to disclose them.

41. Defendants have not identified any legal basis for their failures to conduct reasonable searches for and to timely produce responsive records without relying upon improper exemptions.

42. The failure of Defendants to conduct reasonable searches for and to produce responsive records violates 5 U.S.C. § 552(a) and the regulations promulgated thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1) Declare that Defendants' failure to produce requested records is unlawful;

(2) Order Defendants to immediately conduct full, adequate, and timely searches and make available any and all non-exempt responsive records and *Vaughn* indices of any responsive records withheld under a claim of exemption;

(3) Enjoin Defendants from withholding all records responsive to the requests;

(4) Award Plaintiff his costs and reasonable attorneys' fees under 5 U.S.C. § 552(a)(4)(E); and (5) Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By: /s/ Joseph Meyers
Joseph Meyers (CA SBN #325183)
National Immigration Project of the
National Lawyers Guild (NIPNLG)
2201 Wisconsin Ave NW, Suite 200
Washington, DC 20007
(202) 656-4788
joseph@nipnlg.org

Stacy Tolchin (CA SBN #217431)
Email: Stacy@Tolchinimmigration.com
Megan Brewer (CA SBN # 268248)
Email: Megan@Tolchinimmigration.com
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233
Counsel for Plaintiff

Dated: February 16, 2022